We'll now move to the third appeal for this morning. Alonso Corral v. Brian Foster, appeal number 20-1665. Mr. Pinnocks? Mr. Pinnocks, you're on mute. Is it? Judge Hamilton, I only see one counsel. Oh yes, I don't see Attorney Bergen. Thank you, Mr. Kirsch. Judge Kirsch, sorry. She should be coming in momentarily, Judge. Matt, are you all checking in with her? Yeah, I can see they're doing something. Okay. Yeah, sorry, Judge. She had an issue transitioning into the room yesterday, but I think she's coming in now. Yeah, there just must be a little delay on her end, but we should get her video and audio any second now. Her name's popped up, so okay. Hi. You can hear us? All right. So we're ready to begin to call the case again, Corral v. Foster, appeal 20-1665. We'll hear first from Mr. Pinnocks. Go ahead. Thank you, Your Honor. Good morning, and may it please the court. My name is Matthew Pinnocks, and I speak on behalf of the petitioner appellant, Alonso Corral. This case is fundamentally about whether it was ineffective for Mr. Corral's trial counsel to fail to present to the jury evidence that he had before trial of which he was aware and that was directly supportive of the defense that he had chosen to present and, in fact, lobbied the court for permission to present. This case is an identity case. The question that trial counsel chose to put to the jury was, who did the shooting? Was it his client, Corral, or was it this kid named Kenny? When trial counsel walked into the courtroom, he knew he was going to try to convince the jury to accept that Kenny had done it. Mr. Pinnocks, can I ask you a question? I'm not saying there's any such evidence in the record, but is there any evidence in the record that you can point to that indicates any disagreement between your client and trial counsel over the strategy whether or not to put in these booking photos? The reason I ask this question is because I can imagine, I read trial counsel's testimony, and I can imagine here that had Mr. Corral's trial counsel put into the record the booking photos or other evidence of the similarities between your client and Kenny, the state here would have come in with additional evidence to demonstrate that they don't, in fact, look alike, or they could have looked much different at the time the crime was committed. I guess what I'm asking is, what evidence can you point to from the record that demonstrates that this is just not a strategy decision during trial as to put something in as that now is this Monday morning quarterback saying, boy, maybe we should have done it differently and we should get a second bite at the apple? Sure, Judge, thank you for that question. No, it's not hindsight, and it's not second guessing, but to the direct question you asked, do I have any evidence of a disagreement between Corral and his counsel? No, I don't, but I think that's something that is quite important that I guess I had missed until prepping for this oral argument comes out of that hearing transcript, which you were just talking about, where trial counsel admits that he himself had Kenny under subpoena, and it was trial counsel's purpose to call Kenny as a witness, to put him on the witness stand and to elicit from him evidence in the form of the inculpatory statements that Kenny had made. It was not until the time that he was in the courtroom and pleaded the fifth outside the presence of the jury that Corral's counsel then knew at that time that the jury would not see Kenny. So the entirety of time that counsel is prepping for this trial, he's anticipating that the jury's going to see Kenny and going to be able to assess his appearance in comparison to Corral. So there's no way to suggest that counsel would have been scared of the proposition that the jury's going to disbelieve. But couldn't he have decided, well, the state decided not to put Kenny on the witness stand, and maybe from a strategy matter, that is better for me because I get to argue in closing argument, I get to make all kinds of arguments in closing argument because the jury's never seen Kenny. And certainly he could have put on the evidence in his case in chief, but why is this just not a strategy decision that he didn't do it? And he just, he didn't do it. And what makes that ineffective? It was his strategy. Thank you, Judge. It was his strategy all along to call him. It wasn't the state's plan to call Kenny as a witness. It was trial counsel's plan. He had him under subpoena. He wanted evidence from him. He wanted Kenny to sit on the witness stand. Now, when the fifth, when Kenny comes in and pleads the fifth and he's not going to testify, trial counsel has to know that the one question that any person is going to ask is being told to accept the idea that Kenny did it and the witnesses misidentified him is, well, do they look alike? Right. But that's what I'm getting at. Isn't that good for you? Because as far as I know, the state has the burden of proof beyond a reasonable doubt. That's correct, Judge. The argument would be that the state did not meet its burden of proof beyond a reasonable doubt. If the state was trying to prove that Kenny did, did it and Corral didn't do it, then sure. But that's the other way around. This is a circumstance in which the defense is purposefully trying to convince the jurors by a pretrial motion that they filed in Wisconsin to allow the defense to permission to blame somebody else. So that was what the defense did. And so in that regard, the defense is trying to get the jury to buy something. And in the reply brief, I set forth, Judge, the law in Wisconsin that shows that jurors can't speculate to what the evidence might indicate. The jurors can't search for doubt. The jurors are required to assess what evidence that they are given. And in this particular case, they were given no evidence whatsoever to indicate that Corral and Kenny looked alike. So there's that one missing piece. And when trial counsel knows that that's the thing he's trying, the bait that he's trying to get the jury to swallow, he needs to connect those dots. And without connecting them, it's not going to happen. And importantly, even if he was concerned about their appearance and he thought, well, look, it's great. Kenny's not going to testify. They won't see him, even if which I don't think is reasonable. He had in the record documentary evidence in terms of the content of the police reports that would have he could have elicited from the officers to show that the men were of similar height, weight and race. And in this particular case, under the circumstances of the shooting, the people who saw him only saw people who saw the shooting, the witnesses only saw the shooter for seconds. It happened in a matter of seconds. Only one of them was familiar with Corral. He knew him for 15 years, but that witness was distracted. That witness was looking at a cell phone. And when the other person, the driver says, hey, who's outside the car? The guy who knows Corral for 15 years looks up and doesn't even say, oh, that's Alonzo. He doesn't see anybody. He goes back and is banging away at his cell phone. The other witness, the driver, only knew Corral through his brother. He met him a couple of times. Both of those witnesses were unfamiliar with Kenny. The driver didn't even know him. The other witness, the one who was distracted, banging away at his cell phone, only had seen Kenny for a couple of times. So under the circumstances of this particular case, under the circumstances of the faxes they came in and the defense, the defense counsel chose to present, it was objectively unreasonable. If this court looks at the booking photos, sees the men's pictures, and decides that those photographs demonstrate objectively that the men look sufficiently similar, that the jurors could have accepted the proposition that the witnesses would have confused them, then it was objectively unreasonable for trial counsel not to have called him as a witness. I would have thought that Kenny's appearance in front of the jury would have favored one side or the other. I'm not sure who it would be, but I'm kind of mystified by the fact that he wasn't called by somebody and that he was allowed to take the fifth outside the presence of the jury. When that happened, did the defense counsel say, the judge, I'd like to have him at least come on the witness stand and take the fifth in front of them, and at least let them take a look at him? Thank you, Judge. No, he did not. My understanding of the law as it stands in Wisconsin is that the fifth is to be pled outside the presence of the jury, so not to as indicate to them some sort of tomfoolery going on. The state wasn't going to call Kenny. Kenny had favorable evidence for the defense. Kenny had before said, I did this. He before calling Kenny as a witness. I reserve two minutes, Judge, and I'm going to end my time and reserve it if there are no further questions. Thank you. All right. Thank you. For the state, Ms. Burgundy. Good morning. May it please the court. I'm Sarah Burgundy representing Warren, the warden, Brian Foster in this case, and I'm here to ask you to affirm the district court decision denying Mr. Corral's petition for writ of habeas corpus. Before I get into the argument, I do want to note I'm having a little bit of technical issue where I'm unable to see the gallery view, so if I am going over my time or if I'm getting close to time and I don't seem to be recognizing it, that's why. Would you like a warning? You want a two-minute warning? That would be helpful if, you know, and feel free to just stop me, too. But so really there's two major insurmountable barriers for Mr. Corral here. First, really, is the standard of review. Where in habeas, AEDPA applies, it's a doubly deferential Strickland claim, and it's Corral's burden to prove that the state courts applied Strickland unreasonably. And as I read Corral's briefs and listen to his argument, he seems to be focusing a bit on the contrary two-prong of AEDPA based on what the court of appeals said that the Strickland standard was. But what the contrary two-prong is getting at are state court decisions where the court completely fails to talk about the standard or it rules differently than the Supreme Court on materially indistinguishable facts. So really the only question here is whether the state court's application of Strickland was unreasonable. And that leads to the second barrier here. Strickland provides that when an attorney articulates a strategic reason for a decision that was sound at the time it was made, that decision cannot support a claim of ineffective assistance of counsel. And here, counsel made a strategic call not to pursue or present evidence of Kenny's appearance based on his personal observations that Kenny and Corral didn't look alike. He based this on watching a three-hour interrogation video of Kenny when he saw Kenny later in the courtroom at trial. That only confirmed his observations in the beginning that the two didn't look alike. And he decided on balance that trying to present affirmative evidence of what Kenny looked like and having the jury compare Kenny to Corral would risk harming Corral's defense. It's a reasonable decision and that can only be undercut by operation of hindsight. And with that, Corral can't overcome the presumption of reasonableness and counsel's strategic decision. And he can't overcome the presumption of reasonableness and the Court of Appeals application of Strickland. So holding. And so we can go into, I mean, I think everything just stops there. I mean, we can talk about the booking photos. We can talk about the general appearance or the jury question or mistaken identification. But ultimately, counsel made a call based on the information he had available to him. None of it was based on a misunderstanding of the law. None of it was based on anything, anything really. You know, counsel talks about this court making a finding that the, that Corral and Kenny looked objectively similar based on the booking photos. No, you don't. It's, you know, these photos are probably as similar as Corral and Kenny are ever going to look. But it doesn't change the fact that at the time that counsel was making this decision, he had no basis to go on sort of a wild goose chase for two photos that might depict Kenny and Corral the same. And he also kept in mind that if he introduces this evidence, that opens the door for the state to introduce more evidence of why they don't look alike. I wanted to respond to a few points that counsel made to clarify. I believe Corral's counsel actually knew that morning before Kenny came up that Kenny was not going to testify and that jury wouldn't see him. But again, at the time as part of his initial decision, he didn't think the jury needed to see Kenny because they look the same or because they didn't look, he didn't see a similarity between the two. He didn't see a reasonable. Counsel, imagine slightly different facts where they do resemble each other more strongly in person. Was there anything that would, Mr. Pinnocks has told us that what Wisconsin practice is not to allow a witness to be called only to take the fifth in person. But would there have been any obstacle to calling Kenny simply to come into the courtroom for the jury to see him? There, I don't think there would have been an obstacle to that. Is there any request to do that in this case? There wasn't. I think attorney Cotton said in the mock hearing, you know, when he was saying when I saw Kenny in person, it just confirmed my initial impression that they didn't look alike. And he said, had I had any kind of, you know, gut reaction of like, oh, these two look alike, they could be mistaken for each other. I would have stood up and had asked the jury, asked the judge to bring the jury in. But again, that didn't, that wasn't, what something that wasn't there, it wasn't there. So, you know, I think, and I think the other thing that could have happened too, is the state could have, you know, the state was limited from presenting the video of, I'm sorry, what Kenny had said to police in the video, but it could have presented the video. I mean, it still could have presented the video and allowed the jury to see Kenny that way. So, you know, that all could have come in. And I think ultimately, you know, the issue here too, is that both witnesses knew Corral. I, you know, I think counsel sort of undercutting how well they knew them, but the driver knew him and recognized him right away, called out to him, said, hey, Alonzo, the passenger knew Corral and both of them and identifications in court, regardless whether they might've had some reliability issues, they said, I really had no doubt we saw his face, it was him. So ultimately presenting evidence that maybe they have a similar body type, you know, it still doesn't change the fact that they had 100% certainty that it was Corral who shot at them. So, I think also to the point of, you know, who does this evidence hurt or help? I mean, I think ultimately in this case, what attorney Cotton did was incredibly effective assistance. So the state's burden here is to show the shooter was Corral. When the jury's left with a suggestion that Corral, that Kenny was also there and might've been dressed alike to Corral without other information, they can't speculate that they didn't look alike. I think they ultimately, it ultimately would go against the state to say, state, you didn't establish reasonable doubt that the shooter wasn't, you know, the shooter wasn't actually Kenny or, you know, or it was Corral. So again, I think with counsel's reasonable decision and with the state court of appeals decision, I think we're just stuck at go here. And unless the court has further questions, I'm going to ask that you affirm the district court's decision and deny Mr. Corral's petition. Okay. Thank you. Ms. Burgundy, Mr. Pinnock's rebuttal. You need to unmute. Thank you, judge. Technological problems. Two things I want to address. First of all, with regard to EDPA and its application here, it is our position that indeed this is a contrary to case and not an unreasonable case. The reason that we say it's contrary to is the state's decision. It does not clearly articulate the Strickland standard, the authority to which it cites for the proposition that there's, that it might be talking about the Strickland standard doesn't set forth that standard completely. And then the court's reasoning by ignoring relevant facts on the record, having to do with the deficiency analysis show that it's contrary to Strickland. You know, Harrington versus Richter U.S. Supreme court case very clearly says that Strickland must be scrupulously honored. This court of appeals decision did not do that. Therefore it's contrary to, but even if it's under the unreasonable standard and it gets to double deference, if this court believes that those men look objectively dissimilar, we cannot allow counsel's subjective interpretation of the evidence to be dispositive of deficiency. Otherwise in every case where there was some apparent, excuse me, in a case where there was an apparent misinterpretation of the evidence by trial counsel, we would have to just say whatever that misinterpretation was, counsel acted reasonably under it. Even if every other person who looks at it would say, that's not the case. So if everybody looks at these two men and says they look sufficiently similar that under the circumstances of this shooting, witnesses could have confused them. Then that constitutes a holding that no reasonable jurist could disagree with being deficient to not present the evidence of their appearance. I also quickly, I want to say he didn't have to present the booking photos. It's not just about the booking photos. It's about some evidence of their appearance. We would ask that the court reverse the lower court's decision in order that a petition be granted. Thank you. Our thanks to both counsel. The case is taken under advisement.